```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - X
BARBARA BALABER-STRAUSS, as Trustee of     :      ECF CASE
The Estate of Loronda Murphy, LORONDA
MURPHY, Individually, and VINCENT          :
MURPHY,                                           05 Civ. 1873 (WCC)
                                           :
               Plaintiffs,
                                           :
        - against -                               **OPINION**
                                           :      **AND ORDER**

THE TOWN/VILLAGE OF HARRISON, FRANK
ALLEGRETTI, in his official and            :
individual capacities, STEPHEN
MALFITANO, in his official and             :
individual capacities, and "JOHN DOE"
and "RICHARD ROE," two unknown             :
Detectives employed by the Town of
Harrison Police Department,                :

               Defendants.                 :
- - - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

LAW OFFICES OF WILLIAM F. MACREERY
**Attorneys for Plaintiff Barbara
  Balaber-Strauss, as Trustee of
  The Estate of Loronda Murphy**
Seven Granite Springs Road
Granite Springs, NY 10527

WILLIAM F. MACREERY, ESQ.

    Of Counsel

OXMAN TULIS KIRKPATRICK WHYATT
 & GEIGER, LLP
**Attorneys for Plaintiffs Loronda
  Murphy and Vincent Murphy**
120 Bloomingdale Road
White Plains, NY 10605

MARC S. OXMAN, ESQ.

    Of Counsel

**A P P E A R A N C E S :  (continued)**

                                        FREIDMAN, HARFENIST, LANGER
                                              & KRAUT
                                        **Attorneys for Defendants**
                                        2975 Westchester Avenue, Suite 415
                                        Purchase, NY 10577

STEVEN J. HARFENIST, ESQ.

        Of Counsel

**CONNER, Senior D.J.:**

Plaintiffs Loronda Murphy, Vincent Murphy, her husband, and Barbara Balaber-Strauss, trustee of the bankrupt estate of Mrs. Murphy, bring this action pursuant to 42 U.S.C. § 1983 against (1) the Town/Village of Harrison (the "Town"); (2) Frank Allegretti, the Town attorney; (3) Stephen Malfitano, the Town mayor; and (4) John Doe and Richard Roe, unidentified Town detectives (collectively, "defendants"). Plaintiffs claim defendants abused their respective governmental powers to retaliate against plaintiffs and chill plaintiffs' First Amendment rights by making defamatory comments about the Murphys at a public meeting during which the Town's foreclosure of the Murphy's home was discussed. Plaintiffs also allege violations of their Fifth and Fourteenth Amendment rights, as well as a state law claim for defamation.

Defendants now move to dismiss the Second Amended Complaint (the "Complaint") pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. For the reasons set forth herein, the motion to dismiss is granted as to all the federal claims asserted in the Complaint. As this Court declines to exercise supplemental jurisdiction over the remaining state law defamation claim, that cause of action is dismissed without prejudice.

**BACKGROUND**

The following statement of facts, which, for the purposes of this motion, we assume to be true, is based on plaintiffs' Complaint and the exhibits incorporated therein by reference. Mrs. Murphy purchased a residential home located at 1596 Old Orchard Street in the Town (the "Property") for $545,000 and took title to the Property by deed dated June 29, 2000. (Complt. ¶ 11.)

By December 16, 2002, Mrs. Murphy had not paid real property taxes on the Property, accruing an arrearage of $28,673.28. (*Id.* ¶ 12.) As a result, the Town commenced an *in rem* tax foreclosure proceeding in New York State Supreme Court for the County of Westchester against the Property and nineteen other properties also delinquent in the payment of real property taxes. (*Id.* ¶ 13.)

The Town set a redemption date of May 9, 2003 (*id.* ¶ 13) and allegedly served Mrs. Murphy and her mortgagor, Washington Mutual Bank, F.A., with notice of the proceeding via ordinary mail. (*Id.* ¶ 14.) After the redemption date passed with no payment having been made, the Town moved for entry of a default judgment against Mrs. Murphy's property. (*Id.* ¶ 16.) At that point, Mrs. Murphy filed her opposition to the motion, claiming no notice was given. (*Id.* ¶ 17.) The New York Sate Supreme Court nevertheless granted the Town's motion for default judgment, awarding legal title to the Property to the Town. (*Id.* ¶ 18.) By deed dated September 26, 2003, the Town's Receiver of Taxes officially conveyed title to the Town. (*Id.* ¶ 19.)

Through an agreement with the Town, the Murphys and their two children continued living on the Property while negotiations toward a resolution of the debt proceeded. (*Id.* ¶¶ 20, 22.) During this period, Mrs. Murphy, with the assistance of an organization called Concerned Harrison Homeowners ("CHH"), mailed letters to Town residents explaining her situation and urging the residents to contact the Town to voice their opposition. (*Id.* ¶ 39 & Ex. A.) The campaign proved effective, garnering support for the Murphy's cause and leading residents to contact Town officials to express their disapproval of the Town's actions. (*Id.* ¶ 40 & Ex. B.)

On or about February 26, 2004, negotiations broke down. (*Id.* ¶ 23.) The Town held a scheduled public meeting that evening, at which the CHH campaign was addressed. (*Id.* ¶¶ 41-42.) At the beginning of the public comment and participation portion of the meeting, during which time

2

Mrs. Murphy was registered to speak,[1] Malfitano stated:

> Over the past several days, as most of you are aware, there was a mailing that was sent to the residents of Harrison by an organization that is referred to in the mailing as "Concerned Harrison Homeowners." The purpose of the mailing was to call attention to the Town of Harrison's foreclosure on (the Subject Property). I want all of you to know who are here this evening and who are listening that the mailing does contain false and misleading information.

(*Id.* ¶ 42.) Malfitano then turned the meeting over to Allegretti, who commented:

> As the town attorney for the Town of Harrison, I feel I have an obligation to set the record straight on the misinformation that is being distributed to the public in connection with a certain tax foreclosure proceeding that I had brought on behalf of the Town of Harrison against certain properties within the town, one of them including property located at 1596 Old Orchard Street in Harrison whose title owner is Loronda Murphy. Ms. Murphy purchased this property following a mortgage foreclosure sale in June of 2000, for what appears to be the price of $200,000.00. Mrs. Murphy was able to take cash from the closing for herself as she obtained a mortgage in the amount of $485,000.00.
>
> . . .
>
> It has also come to the attention of the Town that Mrs. Murphy and her husband claimed tax deductions on their personal tax returns submitted to both the IRS and the New York State Commission for the years 2001 and 2002, years in which they paid absolutely no taxes to the Town.

(*Id.* ¶¶ 55, 57.) The meeting was broadcast on local cable television three times each day for two weeks, and the statements were published in the March 5, 2004 edition of the *Harrison Report*, a local Town newspaper.[2] (*Id.* ¶¶ 57, 64.) Plaintiffs deny the truth of these assertions.

---

[1] Pursuant to Town practice, any person wishing to speak during the public participation portion of a Town meeting is required to notify the Town via the Town clerk in advance of his/her intention to do so. (Complt. ¶ 41.) Mrs. Murphy complied with this rule. (*Id.* ¶¶ 41, 50.)

[2] This article, incorporated by reference in the Complaint, noted that Allegretti "brought to light additional information that a similar situation had transpired in North Castle, N.Y., where Murphy again had not paid taxes for a period of four years . . . before making full restitution in 2003 to the tune of $19,000." (Complt., Ex. B.) It is not clear from the article whether Allegretti presented this information at the meeting or presented it only to the article's author.

3

On March 1, 2004, Mrs. Murphy filed a voluntary petition seeking relief under Chapter 13—later converted to Chapter 7—of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"). (*Id.* ¶ 24.) Balaber-Strauss was appointed trustee of the bankruptcy estate at that time. (*Id.* ¶ 25.)

Three days later, Allegretti and several Town police officers came to the Property. (*Id.* ¶ 27.) The parties agree that Mr. Murphy informed Allegretti that any action by the Town would be in violation of 11 U.S.C. § 362, the automatic stay of enforcement proceeding provision of the Bankruptcy Code.[3] (*Id.* ¶ 28.) Plaintiffs allege Allegretti responded that the "'Federal Bankruptcy Court means nothing to Harrison' and that the automatic bankruptcy stay did not apply." (*Id.* ¶ 29.) At some point during this meeting, an unidentified attorney representing Mrs. Murphy reached an agreement with Allegretti whereby Allegretti and the Town's building inspector would inspect the Property and then leave the premises. (*Id.* ¶ 30.) According to the Complaint, Allegretti left the premises after the inspection but returned some hours later with a "phalanx" of Town police officers and "forcibly evicted" the Murphys from the Property. (*Id.* ¶¶ 31-32.)

On or about April 23, 2004, plaintiffs allege detectives Doe and Roe appeared at Mr. Murphy's mortgage business looking for Mrs. Murphy, who worked for her husband, in order to question her in connection with a criminal investigation relating to the Property. (*Id.* ¶ 71; Pls. Mem. Opp. Mot. Dismiss at 8-9.) According to the Complaint, the detectives read Mr. Murphy his *Miranda* rights and proceeded to interrogate him about doors and windows missing from the Property. (Complt. ¶ 72.) The detectives left without arresting Mr. Murphy, and no criminal charges

---

[3] A copy of Mrs. Murphy's filed bankruptcy petition was posted on the front door of the home. (*Id.* ¶ 26.)

were filed against him or his wife. (*Id.* ¶ 73.)

On May 4, 2004, Balaber-Strauss commenced an action in Bankruptcy Court against the Town seeking to set aside the conveyance of the Property. Plaintiffs filed the instant action on February 7, 2005.

**DISCUSSION**

**I.      Standard of Review**

On a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984). A court's task in determining the sufficiency of a complaint is "necessarily a limited one." *Id.* A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States*, 82 F.3d 23, 26 (2d Cir. 1996) (quoting *Hughes v. Rowe*, 449 U.S. 5, 10 (1980)). Generally, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed. 1997); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 (2d Cir. 1995).

"In assessing the legal sufficiency of a claim, the Court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference . . . and documents that are 'integral' to plaintiff's claims, even if not explicitly incorporated by reference." *John v. N.Y.C. Dep't of Corrs.*, 183 F. Supp. 2d 619, 627 (S.D.N.Y. 2002) (Conner, J.) (internal

5

citations omitted). On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all of the well-pleaded facts and consider those facts in the light most favorable to the plaintiff. *See Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993); *In re AES Corp. Sec. Litig.*, 825 F. Supp. 578, 583 (S.D.N.Y. 1993) (Conner, J.).

II.     **First Amendment Violation**

To establish a First Amendment retaliation claim, a plaintiff must prove that: (1) she has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by her exercise of that right; and (3) defendants' actions effectively chilled the exercise of plaintiff's First Amendment right. *See Estate of Morris v. Dapolito*, 297 F. Supp. 2d 680, 692 (S.D.N.Y. 2004) (Conner, J.); *see also Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

Plaintiffs claim defendants retaliated against them because Mrs. Murphy exercised her First Amendment right in speaking at the public Town meeting. Nevertheless, plaintiffs also claim their First Amendment rights were chilled.[4] Specifically, plaintiffs allege that: (1) Allegretti, with the knowledge and approval of Malfitano, "falsely vilified and defamed" the Murphys (Complt. ¶ 43); (2) Allegretti's "disparaging and defamatory statements" were aimed at publicly discrediting plaintiffs by "placing them in a bad light . . ., alienating the public support [they] previously received, and chilling . . . their exercise of, and depriving [them] of their constitutional rights to publicly redress their grievances and garner further public support," which resulted in a change of public opinion (*id.* ¶¶ 46, 47); (3) Allegretti's "disparaging and defamatory statements" were made to

---

[4] Whether Balaber-Strauss and Mr. Murphy are proper plaintiffs in a § 1983 cause of action alleging a violation resulting from Mrs. Murphy's First Amendment rights is questionable, but need not be decided given this Court's grant of dismissal.

6

discourage Mrs. Murphy from speaking at the public meeting and to harm her "ability to be taken seriously by citizens she was attempting to reach and influence" (*id.* ¶ 51); (4) the detectives' actions were "intended to deter and hinder" plaintiffs pursuit of and cooperation in the Bankruptcy proceeding as well as chill "their right to seek legal redress" against defendants (*id.* ¶¶ 73, 74); and (5) defendants were liable for defamation under state law. (*Id.* ¶¶ 53-69.)

### A. <u>Defamation Claims Are Insufficient to Form Basis for § 1983 Action</u>

Plaintiffs' Complaint repeatedly alleges that Allegretti's speech defamed Mrs. Murphy. (Complt. ¶¶ 43, 46, 51, 54, 56, 58, 60, 62, 65.) In addition, plaintiffs' Memorandum of Law in Opposition to Defendants Motion to Dismiss (plaintiffs' "Memorandum") repeatedly states that Allegretti's comments were part of a "smear" campaign intended to discredit plaintiffs. (Pls. Mem. Opp. Mot. Dismiss at 12, 15, 17, 25.) According to plaintiffs' own synopsis, "In short, as the direct result of the defendants' denigration, plaintiff Loronda Murphy became 'the girl who cried wolf'— someone not to be believed and someone to be dismissed completely, regardless of what she had to say." (*Id.* at 18.)

Even taking all facts alleged in the Complaint as true, as the Court must on a motion to dismiss under Rule 12(b)(6), it is apparent that all of plaintiffs' claims are based on defamation. "The New York Court of Appeals has defined a defamatory statement as one that exposes an individual 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induces an evil opinion of one in the minds of right-thinking persons, and . . . deprives one of . . . confidence and friendly intercourse in society.'" *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 177 (2d Cir. 2000) (quoting *Kimmerle v. N.Y.*

*Evening Journal*, 262 N.Y. 99, 186 N.E. 217, 218 (1933)). "The gravamen of an action alleging defamation is an injury to reputation." *Celle*, 209 F.3d at 177. This is the precise nature of the claims before the Court. "Defamation, however, is an issue of state law, not of federal constitutional law, and therefore provides an insufficient basis to maintain a § 1983 action."[5] *Sadallah,* 383 F.3d at 38 (citing *Lauro v. Charles*, 219 F.3d 202, 207 (2d Cir. 2000), in turn citing *Paul v. Davis*, 424 U.S. 693, 699-701 (1976)). Consequently, plaintiffs have failed to allege a proper basis for a § 1983 action, warranting dismissal of their claims.

### B. Plaintiffs Fail to Allege Actual Chill

Even if plaintiffs' Complaint had alleged an adequate basis for a § 1983 cause of action, it nevertheless fails to establish a First Amendment retaliation claim. Defendants appear to concede that (1) Mrs. Murphy had an interest protected by the First Amendment and (2) defendants' actions were motivated or substantially caused by her exercise of that right.[6] However, this Court is persuaded that plaintiffs' First Amendment rights have not been chilled.

The Second Circuit has stated that to properly allege a claim for First Amendment retaliation, a plaintiff must show that his First Amendment rights were "'actually chilled.'" *Curley*, 268 F.3d

---

[5] Accordingly, defendants Allegretti and Malfitano are likely entitled to qualified immunity since the conduct attributed to them (i.e. defamation) is not prohibited by federal law. *See Sadallah v. City of Utica*, 383 F.3d 34, 38-40 (2d Cir. 2004). However, the Court need not conclusively resolve that issue given its grant of dismissal.

[6] For the purposes of deciding the motion to dismiss, this Court assumes Allegretti's comments were directed at Mrs. Murphy's speech. We note, however, that the Complaint appears to conflate her speech with that of CHH, the community group championing her cause through a mail campaign.

8

at 73 (quoting *Davis v. Vill. Park II Realty Co.*, 578 F.2d 461, 464 (2d Cir. 1978) and *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)). "'Allegations of a subjective "chill" are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.'" *Id.* Indeed, in *Estate of Morris*, this Court quoted *Curley* for the principle that "'[w]here a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech.'" 297 F. Supp. 2d at 693 (quoting *Curley*, 268 F.3d at 73).

In *Curley*, the plaintiff campaigned for village trustee in 1994 and again in 1995 after he was arrested by the defendants, allegedly in retaliation for comments made during his 1993 run for village mayor. Curley argued that his 1995 campaign was "demoralized and only amounted to a token effort" as a result of his arrest. 268 F.3d at 73. The fact that Curley continued his 1994 campaign and chose to run again in 1995 convinced the Second Circuit that no chilling effect on his First Amendment rights could be established. *Id.*

This analysis is directly applicable to plaintiffs' case. Plaintiffs claim that defendants' smear campaign discredited Mrs. Murphy and was "designed for the purpose of discouraging" her from speaking. (Complt. ¶¶ 51, 65.) Defendants "painted her in such a negative light that even if she did manage to go through the motions of addressing the Town Board and her neighbors, she was perceived, as the direct result of the defendants' preemptive strike, as . . . not worthy of belief." (Pls. Mem. Opp. Mot. Dismiss at 18.) Yet nowhere in the Complaint does it allege that Mrs. Murphy failed to speak at the public Town meeting. In fact, the newspaper article attached as Exhibit B to the Complaint, and incorporated by reference therein, makes clear that Mrs. Murphy *did* speak at the meeting. Indeed, plaintiffs' Memorandum concedes this fact: "The mere fact that plaintiff Loronda Murphy was still able to physically move volumes of air through her vocal cords should not be

9

determinative as to whether her First Amendment rights were chilled." (*Id.*) Plaintiffs assert Mrs. Murphy's speech was chilled because members of the public "changed their mind[s] after hearing the facts." (Complt., Ex. B; *id.* ¶ 47.) The First Amendment affords Mrs. Murphy the right to speak, not the right to be believed or to exclude others from expressing contrary views. As she exercised her right to speak, she has "quite plainly shown no chilling of [her] First Amendment right to free speech." *Curley*, 268 F.3d at 73.

The lengthy list of cases, including *Estate of Morris*, that plaintiffs cite for the proposition that the severe nature of the defamatory conduct itself establishes chill miss the mark. Those cases all focus on the imposition of severe punishment for speech, including incarceration or expulsion from school. *See Estate of Morris*, 297 F. Supp. 2d at 694 (noting that "summary punishment for the exercise of constitutional rights is clearly a more serious infringement of those rights than a mere chilling of their constitutional exercise"); *see also Kerman v. City of New York*, 261 F.3d 229, 242 (2d Cir. 2001); *Webster v. City of New York*, 333 F. Supp. 2d 184, 202 (S.D.N.Y. 2004); *Brown v. W. Conn. State Univ.*, 204 F. Supp. 2d 355, 364 (D. Conn. 2002). In *Webster*, the court focused expressly on the close temporal proximity, or immediacy, of the severe punishment in relation to the speech. 333 F. Supp. 2d at 202. This Court does not believe that the alleged statements, even if false and defamatory, amount to punishment of sufficient severity to constitute chill in and of themselves.

Nor do the allegations concerning the Town detectives present a viable claim for the reasons just expressed. To the extent those allegations charge more than simply First Amendment retaliation, the detectives' questioning of Mr. Murphy does not constitute severe punishment, and plaintiffs have continued to pursue both the existing Bankruptcy Court action against defendants and the instant action, thus negating any alleged chill. In addition, plaintiffs' repeated overblown

references to the detectives as "stormtroopers," characterization of their inquiry as a "Jeanine Pirro-led" investigation and allusion to the Russian, Italian and Nazi secret police add no legal substance to their claims.

Accordingly, plaintiffs' First Amendment retaliation claims are dismissed.

### III. Fifth and Fourteenth Amendment Claims

Plaintiffs make a single reference to deprivation of their Fifth and Fourteenth Amendment rights in the Jurisdiction and Venue portion of the Complaint. (Complt. ¶ 9.) The Complaint contains no allegations supporting these alleged constitutional violations and plaintiffs' Memorandum makes no argument relating to these rights.

Insofar as plaintiffs maintain an alleged violation of their Fifth Amendment rights, that claim must be dismissed as plaintiffs "have not named the United States government or any agency or employee thereof as a defendant in this matter." *See Cassidy v. Scoppetta*, 365 F. Supp. 2d 283, 286 (E.D.N.Y. 2005). The Fifth Amendment "'governs the conduct of the *federal* government and *federal* employees, and does not regulate the activities of state officials or state actors.'" *Id.* (quoting *Dawkins v. City of Utica*, No. 93-CV-373, 1997 WL 176328, at *4 (N.D.N.Y. Apr. 4, 1997) (emphasis in original) (internal citations and quotation marks omitted)).

With regard to any potential Fourteenth Amendment claim, the Court is unable to glean such a claim from the Complaint. "It has been settled since the United States Supreme Court decided *Paul v. Davis* . . . that the stigma associated with defamation does not, without more, give rise to a Fourteenth Amendment violation." *Olivera v. Town of Woodbury*, 281 F. Supp. 2d 674, 687 (S.D.N.Y. 2003). There is no allegation in the Complaint that any interest was taken without due

11

process of law, either as a result of Allegretti's statements or the detectives' investigation. The New York Supreme Court already had issued a default judgment in favor of the Town and title to the Property already had passed to the Town when the complained of events occurred. Any claimed violation of the automatic stay of enforcement proceedings provision of the Bankruptcy Code must be brought before the Bankruptcy Court, not before this Court as a § 1983 action. We note that plaintiffs have filed an action before the Bankruptcy Court raising Fifth and Fourteenth Amendment due process claims. (Complt. ¶ 35.)

**IV.** **State Law Defamation Claim**

Although plaintiffs' Complaint does explicitly assert a claim under New York state law for defamation, "because plaintiffs no longer have any viable federal claim, any remaining state law claims belong in state, rather than federal, court." *Sadallah*, 383 F.3d at 40-41; *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."). We therefore decline to exercise supplemental jurisdiction over the defamation claim.

**CONCLUSION**

For all of the foregoing reasons, the motion of defendants Town/Village of Harrison, Frank Allegretti, Stephen Malfitano, John Doe and Richard Roe to dismiss the action pursuant to FED. R. CIV. P. 12(b)(6) is granted. All the federal claims asserted in Counts I, II, III and V are dismissed

with prejudice and with taxable costs. The state claim asserted in Count IV is dismissed without prejudice.

SO ORDERED.

Dated: White Plains, New York
December 15, 2005

*William C. Conner*
Sr. United States District Judge